UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

NYGAKRYSTLE FENNELL,

    Plaintiff,

v.

INNOVATIVE MANAGEMENT
CONCEPTS, INC.,

    Defendant.

Civil Action No. 25-1062-TDC

**MEMORANDUM OPINION**

Plaintiff Nygakrystle Fennell has filed this civil action against her former employer, Innovative Management Concepts, Inc. ("IMC"), in which she alleges violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code. Ann., State Gov't §§ 20–601 to 20–1203 (West 2021), arising from the termination of her employment. IMC has filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

**I.    IMC Employment**

In 2023, IMC, a Virginia corporation with its principal place of business in Georgia, retained Verigent, LLC, a temporary staffing company based in North Carolina, to recruit candidates for a position as a Data Scientist supporting a federal government contract held by IMC,

known as the ESIM Contract, to provide services at Fort Shafter in Hawaii. Through Verigent, IMC was seeking employees from various parts of the United States and expected that they would work remotely rather than at Fort Shafter.

In December 2023, Verigent referred Fennell to IMC for consideration for the Data Scientist position. On December 7, 2023, Fennell signed a Letter of Intent in which she agreed to accept the role, which was to work remotely to support the ESIM Contract. In the Letter of Intent, Fennell acknowledged that she would travel to Hawaii, at IMC's expense, for an orientation session shortly after she began work. IMC was aware that Fennell would be working remotely from her home in Maryland, except for when she traveled to Hawaii for the orientation.

In January 2024, after Fennell began working for IMC, she submitted multiple requests for a reasonable accommodation in which she sought permission to submit timesheets on a weekly basis, rather than clocking in and out each day, due to an autoimmune disorder which affects her memory. Initially, IMC denied the requested accommodation but then began to investigate whether an accommodation could be granted. Ultimately, however, IMC terminated Fennell's employment on March 8, 2024.

## II.     Procedural History

On May 6, 2024, Fennell filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), the Maryland Commission on Civil Rights, and the Office of Human Rights of Montgomery County, Maryland. After the EEOC issued a Notice of Right to Sue, Fennell filed the original Complaint in this case in the Circuit Court for Montgomery County, Maryland on December 2, 2024. After IMC removed the case to this Court, Fennell filed the presently operative Amended Complaint in which she alleges, in Count 1, a failure to provide a reasonable accommodation, in violation of the ADA, the MFEPA, and the

Montgomery County Code, based on IMC's failure to allow her to submit her timesheets on a weekly basis; and in Count 2, unlawful retaliation, in violation of the ADA, the MFEPA, and the Montgomery County Code, arising from IMC's termination of her after she had requested a reasonable accommodation.

## DISCUSSION

In its Motion to Dismiss, IMC seeks dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds that this Court has neither general jurisdiction nor specific jurisdiction over IMC.

### I.  Legal Standards

Under Rule 12(b)(2), the plaintiff has the burden to establish personal jurisdiction. *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993). To carry that burden at the pleading stage, the plaintiff need only make a *prima facie* showing that the defendant is properly subject to the court's jurisdiction. *Id.* at 60. In evaluating the plaintiff's showing, a court must accept the plaintiff's allegations as true and must resolve any factual conflicts in the plaintiff's favor. *Id.* The court may consider affidavits and other submitted evidence in resolving a Rule 12(b)(2) motion. *See CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 763–64 (D. Md. 2009).

For a district court to assert personal jurisdiction over a nonresident defendant, the exercise of jurisdiction (1) "must be authorized under the state's long-arm statute"; and (2) "must comport with the due process requirements of the Fourteenth Amendment" to the United States Constitution. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). In this instance, as discussed below, the Court finds that the Motion can be

resolved based only on its consideration of the due process requirements, so it need not address whether jurisdiction is authorized under the Maryland long-arm statute.

As to due process, a court may exert personal jurisdiction over a nonresident defendant in keeping with due process if the defendant has "certain minimum contacts" with the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Determining whether a defendant has such contacts is a fact-specific undertaking. *Kulko v. Superior Ct.*, 436 U.S. 84, 92 (1978). In assessing the presence of minimum contacts, courts distinguish between two types of personal jurisdiction: general and specific.

## II. General Jurisdiction

A court has general personal jurisdiction over out-of-state defendants whose "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For a corporate defendant, general jurisdiction typically exists in the state in which it was incorporated or in which its principal place of business is located. *See id.* at 137; *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). In an "exceptional case," a corporate defendant's operations in the forum state may be so "substantial and of such a nature as to render" it subject to general jurisdiction there. *Daimler AG*, 571 U.S. at 139 n.19; *BNSF Ry. Co.*, 581 U.S. at 413.

Fennell does not and could not reasonably argue that the Court has general jurisdiction over IMC. It is undisputed that IMC is a Virginia corporation and maintains its principal place of business in Georgia. Although between 2020 and 2024, IMC performed work on two government

4

contracts in Maryland, these contracts, which represented less than five percent of IMC's total revenues, are not significant enough to establish an "exceptional case" that would subject IMC to general jurisdiction in Maryland. *BNSF Ry. Co.*, 581 U.S. at 413; *see Fidrych v. Marriott Int'l Inc.*, 952 F.3d 124, 134 (4th Cir. 2020) (finding that a hotel chain with 90 out its 6,200 hotels in South Carolina lacked enough substantial contacts with the state so as to establish an exceptional case for general jurisdiction under *Daimler AG*).

### III. Specific Jurisdiction

A court has specific personal jurisdiction when the defendant has "'purposefully established minimum contacts in the forum State' such 'that [it] should reasonably anticipate being haled into court there.'" *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). In assessing whether specific jurisdiction exists, a court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* at 189 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). A plaintiff must prevail on each prong. *Id.*

On the first factor, whether the defendant purposefully availed itself of the privilege of conducting business in the state, the United States Court of Appeals for the Fourth Circuit has identified a list of nonexclusive factors to consider:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship;

> (7) whether the relevant contracts required performance of duties in the State; and
> (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (quoting *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198–99 (4th Cir. 2018)). The focus should be on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In assessing purposeful availment, courts consider "the *quality* and *nature* of the defendant's connections" to the forum state, "not merely the number of contacts between the defendant and the forum state." *UMG Recordings*, 963 F.3d at 352.

Here, it is undisputed that IMC does not maintain offices or property in Maryland, does not have any active contracts in Maryland, and is not qualified or registered to do business in Maryland. There has been no claim that Fennell's work was governed by a contract requiring that her work be performed in Maryland, that IMC engaged in any work-related, in-person contacts with her while she was in Maryland, or that IMC has any contracts governed by Maryland law. Rather, Fennell argues that IMC purposefully availed itself of the privilege of conducting business in Maryland when it hired Fennell to work in a remote-only position with the knowledge that she would perform her work in Maryland.

The issue of whether employment of a remote worker can demonstrate purposeful availment and thus support personal jurisdiction has not yet been definitively resolved. In employment-related cases in which the plaintiff worked remotely in the forum state, courts that have found specific jurisdiction have relied on a variety of factors, which have included that the employer affirmatively recruited the employee while a resident of the forum state, that there was an employment contract specifying that the employee would work from the forum state, that the

employer supplied the employee with equipment needed to perform work in the forum state, and that the employee conducted some in-person business activities in the forum state, such as attending business meetings or soliciting customers. *See, e.g., Cossart v. United Excel Corp.*, 804 F.3d 13, 16–17, 21 (1st Cir. 2015) (finding purposeful availment where a Kansas defendant employer recruited a Massachusetts resident to conduct sales work in Massachusetts on its behalf, formalized the arrangement in a contract stating that the work would occur in Massachusetts, and facilitated the work by providing office equipment for use in Massachusetts and registering a sales office with the Massachusetts government); *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 510 (E.D. Ky. 2019) (finding purposeful availment where an employer "aggressively sought out" the plaintiff in Kentucky to work for the company, entered into a contract with her to work from Kentucky, and provided her with computer equipment to do so); *Winner v. Tryko Partners, LLC*, 333 F. Supp. 3d 250, 256, 264 (W.D.N.Y. 2018) (finding personal jurisdiction where a New Jersey defendant company employed the plaintiff to "provide marketing services" from her home in New York, expressly agreed to her continuing to live and work in New York, and enlisted the plaintiff to attend multiple meetings with vendors in New York); *Stuart v. Churn LLC*, No. 19-CV-369, 2019 WL 2342354, at *5 (M.D.N.C. June 3, 2019) (finding purposeful availment where the New York defendant employer hired the plaintiff with the understanding that he would work out of his home in North Carolina, provided him an allowance to support office expenses there, and knew that he was working to expand the company's business in North Carolina and was meeting with potential distributors there).

At the same time, other courts have found the hiring of a remote worker insufficient to establish purposeful availment and specific jurisdiction when there was little or no more than knowledge that the employee had made a unilateral decision to work in the forum state. *See, e.g.,*

*Embry v. Hibbard Inshore LLC*, 803 F. App'x 746, 748–49 (5th Cir. 2020) (finding no specific jurisdiction in Louisiana over a Michigan employer where the plaintiff-employee worked remotely from Louisiana, the employer did not object to such work and provided him with paystubs listing a Louisiana address, and the plaintiff asserted that he had attempted to communicate with Louisiana businesses in his work capacity); *Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, 376 F. Supp. 3d 647, 652–53 (E.D.N.C. 2018) (finding no specific jurisdiction in North Carolina over a Maryland employer which hired a North Carolina resident after agreeing with her request that she could work from home, where the company had not recruited her, the employment contract did not require or specify that she would work from any particular location, and it instead required only that she come to the company's Maryland office five days per month), *aff'd*, 770 F. App'x 77 (4th Cir. 2019); *see also Perry v. Nat'l. Ass'n. of Home Builders of U.S.*, No. TDC-20-0454, 2020 WL 5759766, at *1, *4–5 (D. Md. Sept. 28, 2020) (finding no specific jurisdiction in Maryland over a Washington, D.C. employer where the employee was assigned to work in Washington, D.C. and sought to establish purposeful availment based on her assertion that she conducted the majority of her work for the company from her home in Maryland after the workday and on weekends).

Here, Fennell has not identified the kinds of facts and circumstances that can demonstrate purposeful availment relating to a remote worker. Although it is unclear whether Verigent recruited Fennell, IMC did not specifically recruit Fennell, and it did not direct Verigent to recruit individuals from Maryland specifically. There is no evidence that IMC requested or required that Fennell work in Maryland specifically, there is no contract that provides that Fennell will work in Maryland, and IMC did not send equipment to Maryland to support her work. *See Cossart*, 804 F.3d at 21. Finally, there is no evidence that IMC sought for Fennell to conduct any work relating

to Maryland, such as attending business meetings or seeking to expand business there. *See id.* Rather, her work was all directed to supporting the contract activity in Hawaii, and the only in-person meeting or activity she was directed to undertake was the orientation session in Hawaii.

In referencing these factors, the Court does not find that they all must exist, or even that any particular one must exist, for an employer to be deemed to have engaged in purposeful availment in a case brought by a remote worker. Here, however, where none of these additional factors exist, and where Fennell unilaterally chose to work in Maryland, the Court finds that IMC's knowledge that she was doing so, without more, is not sufficient to establish purposeful availment and thus specific personal jurisdiction. *See Embry*, 803 F. App'x at 748–49; *Fields*, 376 F. Supp. 3d at 652–53.

Finally, Fennell's reference to the fact that IMC had two other federal contracts involving work in Maryland between 2020 and 2024 does not alter this conclusion. Although IMC's work relating to these contracts may constitute purposeful availment, such contacts would not support specific jurisdiction because they do not satisfy the second requirement that "the plaintiffs' claims arise out of those activities directed at the State." *Perdue Foods*, 814 F.3d at 189. Because these contracts were undisputedly unrelated to Fennell's work or termination, they do not provide a basis to support specific jurisdiction over Fennell's claims. *See id.*; *Fidrych*, 952 F.3d at 140–41, 143 (finding no specific jurisdiction where the plaintiff's claims were unrelated to the defendant's targeted contacts with the forum state).

Under these circumstances, the Court finds that Fennell has not satisfied the first two requirements for specific personal jurisdiction because she has not shown that IMC's contacts with Maryland demonstrate purposeful availment out of which her claims arise. The Court therefore need not address the third prong of whether the exercise of personal jurisdiction is constitutionally

reasonable. For the reasons discussed above, the Court finds that it lacks personal jurisdiction over IMC in this case.

### IV.    Transfer

Fennell requests that if the Court finds that it lacks personal jurisdiction, it should transfer the case to the United States District Court for the Eastern District of Virginia, within the state in which IMC is incorporated and within which it maintains an office, or another district with venue over this case. IMC opposes this request.

If a district court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631; *In re Carefirst of Maryland, Inc.*, 305 F.3d 253, 255–256 (4th Cir. 2002). In *In re Carefirst*, the Fourth Circuit stated that upon a finding of lack of personal jurisdiction, a district court may also transfer the case to another district pursuant to 28 U.S.C. § 1406, which provides that if a case was filed in a district that is not a proper venue, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *In re Carefirst*, 305 F.3d at 255–256.

IMC is correct that a court may, in its discretion, decline to transfer a case for which it lacks personal jurisdiction on the grounds that the plaintiff's counsel could have reasonably foreseen that the chosen forum was inappropriate. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1202 (4th Cir. 1993). Here, however, the issue of whether a court has specific personal jurisdiction over a company that employed a remote worker who worked in the forum state is a fact-based, emerging area of the law such it was not unreasonable for Fennell to seek to file in this district. Further, Fennell has acknowledged that in light of the requirement that an ADA claim be

filed no later than 90 days after the EEOC's issuance of its Notice of Right to Sue, her claim may be time-barred if dismissed. Under these circumstances, the Court finds that it is in the interest of justice to transfer the case to an appropriate district pursuant to 28 U.S.C. § 1631 and 28 U.S.C. § 1406(a).

Where Fennell requests that, under the present circumstances, this case should be transferred to the Eastern District of Virginia as the closest district in which venue may exist, the Court will agree to do so if venue is proper in that district. *See* 28 U.S.C. § 1631; 28 U.S.C. § 1406(a). However, the present record does not provide sufficient information upon which to determine whether venue is proper in that district under the ADA's venue statute, which provides that an ADA claim may be brought:

> [(1)] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [(2)] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [(3)] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but [(4)] if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

*See* 42 U.S.C. § 2000e–5(f)(3) (establishing the venue requirements for Title VII claims); 42 U.S.C. § 12117(a) (applying the "powers, remedies, and procedures" set forth in 42 U.S.C. § 2000e-5 to ADA employment discrimination claims); *Benton v. England*, 222 F. Supp. 2d 728, 730 (D. Md. 2002).

As to the first two prongs, the present record does not definitively establish where the relevant IMC officials were located when they terminated Fennell, or in which judicial district Fennell's employment records are maintained and administered. Where Fennell would have continued to work in Maryland absent the termination, the third prong does not appear to establish venue in the Eastern District of Virginia, and where IMC's principal place of business is in Georgia, the fourth prong would not do so.

11

Accordingly, the Court will order the parties to meet and confer and to submit to the Court, within **seven days** of the date of this Order, a filing identifying each federal judicial district for which the parties agree that both personal jurisdiction and venue exist in relation to the present case, the basis upon which personal jurisdiction and venue exist in that district, and, if the parties disagree as to any particular district, each party's reasons for its stated position.

## CONCLUSION

For the foregoing reasons, IMC's Motion to Dismiss, ECF No. 17, will be GRANTED IN PART and DENIED IN PART, in that the Court will find that it lacks personal jurisdiction over IMC but will transfer this case to a district in which the case could have been brought. A separate Order shall issue.

Date: October 30, 2025

THEODORE D. CHUANG
United States District Judge